# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Cecilia C. Mak,                          :
                                         :
            Plaintiff,                   :
                                         :
      v.                                 :        CIVIL ACTION NO.
                                         :        1:07-cv-02806-JOF
Argent Mortgage Company, LLC,            :
et al.,                                  :
                                         :
            Defendants.                  :

## OPINION & ORDER

This matter is before the court on Argent Mortgage's motion for summary judgment [55]; Bank of America's motion for summary judgment [75]; Mak's motion for summary judgment [89]; the Government's motion to strike and motion for extension of time to respond [91]; and Bank of America's motion to dismiss, motion to substitute party, and motion for appointment of a special master [98].

## I.   Background

### A.   Procedural History and Facts[1]

Plaintiff, Cecelia Mak, filed a suit in equity against Defendants Wells Fargo Bank NA and Bank of America Corporation, in the Superior Court of Gwinnett County on June 12, 2006.  Mak sought a declaratory judgment for superior title to real estate and complaint for trespass and tortious interference with real estate and a complaint in equity to set aside foreclosure and for negligence.  On November 6, 2006, the parties entered a consent order substituting Argent Mortgage Company, LLC for Wells Fargo.  Argent Mortgage Company filed an answer on November 27, 2006, alleging a counterclaim against Mak and a cross-claim against Bank of America, which alleged one count of quiet title and one count of trespass.  The Superior Court granted Argent's motion to amend filed on September 19, 2007, which added the United States of America and Paul Redd as parties to the case.  The United States Government then removed the suit to this court on November 13, 2007.  Thereafter, Bank of America filed a cross-claim against Argent, Paul Redd, and the United States Government seeking reformation of its Security Deed and quiet title.

The property that is the subject of this lawsuit is located at Land Lot 91 of the 6th District of Gwinnett County, Georgia and is commonly referred to as 929 Cedar Falls Court,

---

[1]The court notes that Mak submitted a "statement of disputed facts" on January 5, 2009.  Mak does not explain how these "facts" are disputed.  Further, the "facts" Mak purports to present are in reality legal conclusions.  This court's Local Rule 56.1B bars the submission of legal conclusions in the guise of a statement of material undisputed facts.

AO 72A
(Rev.8/82)

SW, Lilburn, Gwinnett County, Georgia 30047. Thomasina Redd received a warranty deed to the property on March 31, 1997. (The March 31, 1997, security deed lists Thomasina Redd's address as 311 Locust Avenue, Philippi, West Virginia.). Southern Financial Network obtained a mortgage on the property that same date and recorded the mortgage on April 22, 1997. Bank of America obtained Southern Financial's interest through assignment and recorded its interest also on April 22, 1997. Thomasina Redd died intestate on December 14, 1997. No probate proceedings occurred and no administrator of estate was ever appointed.

On March 3, 2003, Paul Redd and Stephen Redd executed a Quitclaim Deed as "sole heirs and administrators" of the Estate of Thomasina Redd on which Paul Redd is the sole Grantee. The quitclaim deed did not contain an affidavit that Thomasina had died intestate or that identified her heirs at law. The parties vigorously dispute the legal effect of this Quitclaim Deed. Mak submitted the affidavit of Barth Gloyd, a title examiner, who states that he has not found any documents in the Probate Court of Gwinnett County relating to the estate of Thomasina Redd.

On January 4, 2005, Stephen Redd, as an attorney at law, sent a letter and an Interest on Lawyers Trust Account (IOLTA) escrow check to McCalla, Raymer for the payoff amount of $213,720.28 to pay off the Bank of America loan. On January 19, 2005, Bank of America signed a release cancelling the indebtedness on the deed to secure debt from

3

Thomasina Redd to Bank of America. This release was recorded in the Superior Court of Gwinnett County on February 17, 2005. The IOLTA check, however, was dishonored due to insufficient funds. It is undisputed that Bank of America learned the payoff check from Stephen Redd bounced at least as of February 3, 2005, two weeks before the Release was filed in the Superior Court of Gwinnett County.

On March 1, 2005, Paul Redd filed a petition for bankruptcy under Chapter 13 in the United States Bankruptcy Court for the Northern District of Georgia. Redd's bankruptcy filing contains a page listing Bank of America Mortgage c/o McCalla, Raymer and BFI, Inc. There is no indication on the filing as to the status of these entities or their role in Redd's bankruptcy. A copy of Paul Redd's bankruptcy petition was not filed in the Gwinnett County property records as of March 31, 2005. Paul Redd's bankruptcy case was dismissed on April 6, 2005.

After determining that Stephen Redd's check was not honored due to insufficient funds, on March 8, 2005, Bank of America signed a "Rescission of Satisfaction/Cancellation" of Thomasina Redd's debt. This document was filed with the Superior Court of Gwinnett County on March 14, 2005. Again, the parties dispute the significance of this document. Bank of America contends that the document acts to reverse its filing of the satisfaction of Thomasina Redd's debt on the house.

4

On March 28, 2005, the Department of the Treasury – Internal Revenue Service filed a notice of tax lien against any property owned by Paul Redd in Gwinnett County with the Superior Court of Gwinnett County. The taxes had been assessed on September 20, 2004, less than 240 days before Paul Redd filed his bankruptcy petition. The Government re-recorded its tax lien in June 2008.

On March 31, 2005, while the automatic stay was pending in his bankruptcy case and without any prior approval of the Bankruptcy Court, Paul Redd executed a warranty deed for the property in favor of an individual named Corey Stringer. That deed was recorded on April 12, 2005. At closing, Paul Redd executed an Owner's Affidavit under oath which denied that there were any pending suits, judgments, bankruptcies, liens or executions on the property.

Corey Stringer paid $290,000 to Paul Redd directly in consideration for the warranty deed on the property. The same day, Corey Stringer executed a deed to secure debt for the property in favor of Argent Mortgage. This deed was recorded on April 12, 2005. (Although this mortgage was immediately re-assigned to Wells Fargo, several months later, Wells Fargo forced Argent Mortgage to re-purchase the loan due to suspected fraud because Corey Stringer never actually lived in the house despite the fact he affirmed at closing that he would do so. Stringer also did not make any payments on the mortgage. There is evidence that Paul and Stephen Redd leased the property back from Stringer.)

5

Gregory Frassrand, a Georgia attorney, represented Argent at the closing on March 31, 2005, and supervised the title search. The parties agree that Frassrand did not have actual notice of Paul Redd's bankruptcy case, Bank of America's rescission, or the Internal Revenue Service's tax lien. However, Frassrand did work at the same law firm that employed Stephen Redd. Further, on January 12, 2004, he had conducted a title search for Corey Stringer and was aware of the Bank of America Security Deed that was open as of that date in 2004. Frassrand also testified that had he actually seen the Rescission in the chain of title (which he did not because of the "filing gap") he would not have performed the closing.

On June 7, 2005, Bank of America conveyed the property in a foreclosure sale to Cecilia Mak via a deed under power on the courthouse steps. Bank of America did a title search through the law firm of McCalla Raymer and was aware of the Warranty Deed from Paul Redd to Corey Stringer and of Argent Mortgage's loan of money to Corey Stringer. This sale was recorded on October 21, 2005. The IRS received notice of the foreclosure from McCalla Raymer via letter sent on May 12, 2005. The notice sent to the IRS was also included as an attachment to the deed under power provided to Mak at the foreclosure sale.

AO 72A
(Rev.8/82)

Argent/Wells Fargo hired a law firm to process non-judicial foreclosure against Stringer for failure to make mortgage payments.[2]  Wells Fargo foreclosed on the property on November 1, 2005.

Although it still exists as a separate corporate entity, Argent's interests were transferred to Citigroup Global Markets Realty Corporation in 2007.  On February 17, 2009, Argent Mortgage quitclaimed any interest in the property to Liquidation Properties, an affiliate of Citi.  The deed was recorded March 13, 2009 in Gwinnett County.  On February 27, 2009, Liquidation Properties transferred its interest to Floyd and Amy Brooks in a Special Warranty Deed for consideration of $199,000.  On February 27, 2009, Floyd and Amy Brooks obtained a loan for $189,050 from Wachovia Mortgage, FSB in exchange for a Deed to Secure Debt.  The Brooks and Wachovia deeds were recorded on March 13, 2009 in Gwinnett County.  Based on this transaction, Plaintiff moved for contempt against Argent and to add Floyd Brooks, Amy Brooks, and Wachovia Mortgage, FSB as party defendants.

## B.    Contentions

Bank of America argues that its first secured interest in the Property should be revived because (1) the transfer of the property from the estate of Thomasina Redd to Paul and Stephen Redd was inadequate under Georgia law, (2) the Release filed by Bank of America did not operate to revert the property back to Paul Redd because the mortgage debt

---

[2]These acts took place prior to the time Wells Fargo forced Argent to re-purchase the mortgage due to fraud at closing.

AO 72A
(Rev.8/82)

was never paid, and (3) it filed a Rescission of its Release which provided notice of its security interest in the property to all subsequent purchasers. Bank of America further contends that Argent cannot be a bona fide good faith purchaser because its title search was negligent and should have revealed the inadequate transfer among the Redds, the fraud inherent in Paul Redd's transfer of interest in the property to Corey Stringer, the Bank of America Rescission, and Paul Redd's bankruptcy filing.

Argent argues that Bank of America does not have any interest in the property because of the Release it filed. Argent further avers that the Rescission filed by Bank of America has no legal effect and cannot operate to reinstate Bank of America's security interest because it does not comply with the requirements to obtain a security interest in property and it was filed after Paul Redd filed his bankruptcy petition. Finally, Argent contends that even if the Paul Redd to Corey Stringer conveyance were fraudulent, Argent is entitled to bona fide purchaser status as a lender under Georgia law because it had no notice of the fraud.

Finally, Mak avers that she is a bona fide good faith purchaser because she can rely on the default provisions in the deed under power through which she acquired the property in foreclosure and her foreclosure cuts off any junior interests.

8

## II.    Discussion

### A.    Preliminary Matters

This matter is before the court on various motions for summary judgment and to dismiss Argent from the case for lack of standing.  The court held oral argument on these motions on September 10, 2009.  At that hearing, the court orally denied Plaintiff's motion for contempt relating to the subsequent transfer of the property to Amy and Floyd Brooks, finding that (1) Argent had not voluntarily transferred the property to Citigroup Global Markets Realty Corporation or its affiliate, Liquidation Properties and (2) Plaintiff had not provided sufficient evidence from which the court could conclude that Liquidation Properties, Inc., the entity that actually transferred the property to the Brooks, had notice of the temporary restraining order imposed by the state court barring transfer of the property. The court further directed the Brookses to obtain an attorney who should enter an appearance no later than September 24, 2009.  For this reason, the court will not rule at this time on Bank of America and Mak's motions to add the Brooks and/or Wachovia as parties to the litigation.

The court also notes that all parties agree that Argent does not have standing in this case to pursue a quiet title action because it no longer holds an interest in the property.  For this reason, the court DENIES Argent Mortgage's motion for summary judgment on its quiet title claims against Mak and Bank of America [55].  The court, however, will not dismiss

AO 72A
(Rev.8/82)

Argent as a party to this litigation at this time. As counsel for Argent correctly noted at the hearing, Argent could potentially be involved in trespass actions filed by other parties. For this reason, the court DENIES Bank of America's motion to dismiss, motion to substitute party, and motion for appointment of a special master [98].

In light of the Brooks's status, the court issues the following order conditionally. The matters the court rules on below have been fully briefed from numerous positions by the parties currently before the court. In the event, however, that counsel representing the Brookses and/or Wachovia believes that the court has erred in its determinations, the court grants leave to file a motion for reconsideration within ten days after the filing of their notice of appearance in the case.

### B.    Bank of America

All of the parties essentially ask the court to quiet title on the property in question. Because of the multitude of claims and cross-claims, the court finds the most efficient way to determine title is to consider each action in chronological order. Of course, each of those actions has an effect on its own, but also secondarily becomes relevant for what "notice" the action may provide to later searchers in the title chain.

The first act in this case is the quitclaim deed from Stephen and Paul Redd purporting to transfer interest in the property to Paul Redd alone. Stephen and Paul signed this deed on March 3, 2003, in their capacities as "sole heirs and administrators" of the Estate of

Thomasina Redd. Numerous parties argue that this quitclaim deed has no legal effect because Thomasina Redd's estate was never probated and, Stephen and Paul Redd were never appointed as administrators of her estate.

It is clear, however, that Georgia law does not require the participation of an administrator in order to transfer real property upon death. O.C.G.A. § 53-2-7 provides:

> (a) Upon the death of an intestate decedent who is the owner of any interest in real property, the title to any such interest which survives the intestate decedent shall vest immediately in the decedent's heirs at law, subject to divestment by the appointment of an administrator of the estate.

*Id.* The statute then goes on to explain what happens upon the appointment of an administrator. *Id.*, § 53-2-7(c) & (d).[3]

Bank of America vigorously argues that there is no documentation of the transfer of the property from the estate of Thomasina Redd to Stephen and Paul Redd. Therefore, Stephen and Paul could not convey their interests to Paul Redd, and particularly could not do so in the capacity of administrators because Thomasina's estate was never probated and they were never appointed as administrators. Bank of America further asserts that under the

---

[3]Thomasina died in 1997. The version of the Probate Code changed effective January 1, 1998. The prior version of the section stated that if "no administrator is appointed within three years after the death of an intestate, the title to all property owned by the decedent, both real and personal, shall vest in the decedent's heirs and shall be deemed to have become vested in them as of the date of the decedent's death." O.C.G.A. § 53-2-7(b). Under either version of the statute, then, the result is the same. Either the property immediately vested in the heirs or in the absence of an administrator after three years, the property vested as of the date of the death.

Title Standards used in Georgia, a title examiner would expect to see an administrator's deed, or at least an affidavit of all heirs, but that Paul and Stephen only used a quitclaim deed. However, it is clear that the Title Standards do not carry that authority of law in Georgia. Bank of America avers that even if the Title Standards do not have the force of law, they do impact an analysis of bona fide purchaser because they indicate what a sufficient title search in Georgia should consider. Whatever the relative merits of this position, the court need not reach this issue because it decides below that Bank of America's Release did not act to revert the property to Paul Redd because the mortgage debt held by Bank of America was never paid.

Some parties also refer to the "scrivener's error" of the quitclaim deed containing the word "administrators." They also point to the fact that this quitclaim deed was likely produced to facilitate the later fraudulent conveyance to Corey Stringer. Regardless of the recitation of "sole heirs and administrators" and whatever the ultimate intent of Stephen and Paul Redd, by operation of law O.C.G.A. § 53-2-7(a), Thomasina Redd's interest in the property "vest[ed] immediately" in Paul and Stephen upon her death. No party has submitted evidence that other heirs exist or that any other party could claim interest in the property after Thomasina. No evidence has been submitted that an administrator who could divest the interest of Paul and Stephen was ever appointed.

Therefore, the court finds that Paul and Stephen had legal right to convey the property by quitclaim deed in 2003 to Paul Redd only. Whether the manner in which Paul and Stephen conveyed the property in the quitclaim deed should have put any subsequent purchaser on notice of a defect in the chain of title is a separate matter.

The next event that occurs is Stephen Redd's January 4, 2005, mailing of an IOLTA check to Bank of America purporting to pay off Thomasina Redd's mortgage. There is no dispute that the check was dishonored due to insufficient funds. Further, it is undisputed that Stephen Redd had been disbarred on June 7, 2004, due to improper use of IOLTA funds. It appears beyond dispute that this check was fraudulent. However, for reasons not revealed in the record, Bank of America did not wait for the check to clear and instead, signed a release cancelling the indebtedness on the deed to secure debt from Thomasina Redd to Bank of America on January 19, 2005. Again, for reasons not clear in the record, despite the fact that Bank of America learned on February 3, 2005, that the IOLTA check had been dishonored for insufficient funds, Bank of America recorded the Release in the Superior Court of Gwinnett County on February 17, 2005.

No party disputes that the form of Bank of America's Release complied with the terms of O.C.G.A. § 44-14-67(b)(1)-(3) for cancelling a security deed. Generally, cancellation of the deed results in the title of the property being reconveyed to the grantor. *See* O.C.G.A. § 44-14-67; *Northwest Carpets, Inc. v. First National Bank of Chatsworth*,

AO 72A
(Rev.8/82)

280 Ga. 535, 537 (2006). Bank of America, however, argues that because the debt was never actually paid, O.C.G.A. § 44-14-67(a) does not kick in. O.C.G.A. § 44-14-67(a) states:

> In all cases where property is conveyed to secure a debt, the surrender and cancellation of the deed, in the same manner as mortgages are cancelled, ***on payment of the debt*** to any person legally authorized to receive the same, shall operate to reconvey the title of the property to the grantor or the grantor's heirs, executors, administrators, or assigns.

*Id.* (emphasis added). Here, the court agrees that the Bank of America debt was not paid so the title of the property could not be reconveyed to Paul Redd, the successor of the grantor of Bank of America's security interest. Therefore, Bank of America's security interest was never reconveyed and it holds a senior position based on its 1997 mortgage to Thomasina Redd. The court recognized as much in *Northwest Carpets* where following a discussion of numerous Georgia statutes, including O.C.G.A. §§ 44-14-60 and 44-14-67, the court stated that "full payment of the secured indebtedness, as a matter of law, passes legal title back to the grantor." 280 Ga. at 537. Likewise, the converse then would be true. Where there is no payment of the secured indebtedness, the title cannot pass back to the grantor. *See also Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 276 Ga. 848, 850-51 (2003) ("because the debt that the conveyance was made to secure has not been fully paid, Brown is not entitled to cancellation of the security deed'); *Lanning v. Sockwell*, 137 Ga. App. 479 (1976) (holding that "inceptive fraud" (or failure to perform coupled with the present

14

intention not to perform) "is sufficient to support an action for cancellation of a written instrument" and "cancellation obtained by fraud or mistake without payment may itself be canceled by a court of equity"). Thus, because Stephen Redd's check did not clear, Bank of America's "Release" did not operate to reconvey the property to Paul Redd.

To the extent that the validity of Bank of America's purported "Rescission of Satisfaction/Cancellation" impacts the parties' alternative arguments concerning Paul Redd's subsequent bankruptcy, the court notes that on March 8, 2005, Bank of America did sign a "Rescission of Satisfaction/Cancellation" of Thomasina Redd's debt. This document was filed with the Superior Court of Gwinnett County on March 14, 2005. There are three potential issues surrounding the Rescission. First, the legal effect of the document itself; second, whether the Rescission would "excite" notice to subsequent purchasers; and third, the impact of Paul Redd's March 1, 2005, petition of bankruptcy on the purported Rescission.

It is not clear to the court that the Rescission could have any legal effect. Any document that purports to take out a security interest in property must comply with certain statutory requirements. *See* O.C.G.A. § 44-14-61 ("In order to admit deeds to secure debt or bills of sale to record, they shall be attested or proved in the manner prescribed by law for mortgages."). "That is, the instrument must be attested by or acknowledged before an officer as prescribed for the attestation or acknowledgment of deeds, and in the case of real

15

property, it must be attested or acknowledged by an additional witness. . . . Such interests take effect only from the time they are filed for record in the clerk's office." *See Leeds Bldg. Prods., Inc. v. Sears Mortg. Corp.*, 267 Ga. 300, 301 (1996).

While the Rescission is signed by two witnesses and notarized, there is no evidence of the grantor conveying such an interest. Nor did Bank of America attempt to set aside the cancellation of the deed through judicial process. *See*, *e.g.*, *Davis v. Johnson*, 241 Ga. 426 (1978) (allowing bank that had cancelled security deed to be reinstated to original priority position). *See also In re Henderson*, 284 B.R. 515 (Bankr. N. D. Ga. 2002) (Mullins, B.J.) (holding that where bank mistakenly recorded released security deed, but bank later recorded "modification" of deed and "affidavit" explaining release was executed in error, "affidavit" constituted "actual notice" of bank's continuing security interest but affidavit "served only to inform interested parties that the Release was mistakenly entered. The Affidavit did not purport to, nor did it serve to transfer an interest or revive a lapsed interest of the Bank."). Thus, the court concludes that the Rescission has no legal affect. This finding does not, however, alter the fact that Bank of America had, indeed, retained its security interest in the property by operation of O.C.G.A. § 44-14-67(a) because the mortgage debt had never been paid.

With respect to Paul Redd's bankruptcy, it is undisputed that he filed a petition of bankruptcy on March 1, 2005, and the automatic stay pursuant to 11 U.S.C. § 362(a) went

16

into effect. Bank of America signed its Rescission on March 8, 2005, and recorded it on March 14, 2005, both after the imposition of the bankruptcy stay. "The automatic stay provides, in relevant part, that any act to create, perfect, or enforce any lien against property of the debtor to the extent such a lien secures a pre-petition claim is prohibited." *In re Green*, 310 B.R. 772 (Bankr. M. D. Fla. 2004) (citing 11 U.S.C. § 362(a)(5)) (holding that attempt to re-assert lien after lien extinguished cannot happen without court approval); *In re Brooks-Hamilton*, 348 B.R. 512 (Bankr. N.D. Cal. 2006) (filing of *lis pendens* after commencement of bankruptcy case violates automatic stay). Under normal circumstances, therefore, the court would conclude that a Rescission that had legal effect would be taken in violation of the automatic stay and therefore have no effect. *See Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982) ("Actions taken in violation of the automatic stay are void and without effect.").

Bank of America, however, makes two arguments as to why the act of Rescission would not have violated the automatic stay in that § 362(a) only applies to acts to create a lien "against property of the estate." First, the bankruptcy estate of Paul Redd, Bank of America argues, did not contain the property because there was never a valid transfer between Thomasina and her sons. As the court explained above, however, the property was properly transferred to Paul Redd, so this is no defense to the claim that Bank of America's purposed Rescission would have violated the automatic stay of the Bankruptcy Court.

Second, Bank of America contends that the Rescission would not have been a violation of the automatic stay because the Bank of America mortgage was identified as part of the bankruptcy estate and Bank of America was listed as a creditor. The court finds, however, that Bank of America is not clearly listed as a creditor on Paul Redd's petition for bankruptcy. *See* Exh. G, Argent Mortgage Mot. for S.J. Bank of America and BFI, Inc. are listed on a page attached to the bankruptcy petition, but it is not clear whether this is a service page or whether it has some other significance. There is no indication that it is a list of creditors.

The court, however, found above that the Rescission had no legal effect. If the Rescission had no legal effect (other than potentially impacting notice and chain of title issues), then it could not violate the automatic stay because it could not "create, perfect, or enforce" any lien against the debtor's property. Therefore, the court concludes that at this stage in the chronology of events, Bank of America had a senior security interest in the property because the mortgage debt was never actually paid off.

### B. Internal Revenue Service

The United States imposed a tax lien against Paul Redd for his failure to pay income tax for the tax period ending on December 31, 1998. Redd's failure to pay $264,878 in taxes had been assessed on September 20, 2004. Since that time, the United States has held a statutory lien against all property owned by Paul Redd in Gwinnett County. *See* 26 U.S.C.

AO 72A
(Rev.8/82)

§§ 6321, 6322. The United States recorded its tax lien in the General Execution Docket of the Superior Court of Gwinnett County on March 28, 2005. *See United States v. Bond*, 279 F.2d 837, 841 (4th Cir. 1960) (notice is required to establish priority, but "notice, filing or recording are not required" for lien to be valid and effect under §§ 6321 and 6322). The tax lien continues in effect until the liability is satisfied, or the lien is lifted by statute, or withdrawn or becomes unenforceable. The lien continues to attach to the property regardless of subsequent transfers, but it is not valid against certain perfected "first in time, first in right" prior interests, such as a security interest perfected by a recorded mortgage. *See* 26 U.S.C. § 6323. "It is well settled that a properly conducted foreclosure of a mortgage terminated interests that are junior to the foreclosing mortgagee, assuming junior lienholders are joined or notified per applicable law, and subject to any statutory redemption rights those junior lienholders may have." *See United States v. Beauchamp*, 611 F. Supp. 2d 194, 197-98 (D.R.I. 2009) (citing Restatement (Third) of Property, Mortgages § 7.1 (1997)).

In general, a lien in favor of the United States is *not* disturbed by a non-judicial sale of property. 26 U.S.C. § 7425(b) ("a sale of property on which the United States has or claims a lien . . . shall . . . be made subject to and without disturbing such lien or title"). However, there is an exception. A government lien may be disturbed if the IRS receives notice of the sale in accordance with statutory and regulatory requirements. When timely notice is provided, and the foreclosing party does not receive from the IRS before the sale "written notification of the items of information which are inadequate," then the notice operates to extinguish the government's lien once the sale is consummated. Moreover, Congress has provided that as to a foreclosure sale of property encumbered by a federal tax lien, the IRS may redeem the property "within the period of 120 days from the date of such sale of the

19

period allowable for redemption under local law, whichever is longer. 26 U.S.C. § 7425(d)(1)."

*Beauchamp*, 611 F. Supp. 2d at 200 (citations and quotations omitted). Section 7425(b) states that a foreclosure sale takes place subject to the tax liens as opposed to extinguishing them if the IRS did not receive proper notice of the sale.

While various parties have raised issues with respect to the impact of Paul Redd's bankruptcy petition on the United States' tax liens,[4] based on the law described above, the court finds that the heart of the dispute is the relationship between the June 7, 2005, Bank of America foreclosure sale to Mak and the tax liens.

At the September 10, 2009, hearing, the court asked the parties to provide information concerning whether the Internal Revenue Service had received notice of the June 7, 2005, foreclosure sale from Bank of America to Mak. Attached as Exhibit L to Argent Mortgage's motion for summary judgment is a May 12, 2005, letter from Daniel Phelan of McCalla Raymer, Padrick, Cobb, Nichols & Clark, LLC to the District Director of the Internal Revenue Service, to the Attention of Chief, Special Procedures Staff. That letter provides notice to the Government of the pending foreclosure. At the September 10, 2009 hearing, David Powell, representing the Government conceded that this letter provided

---

[4]The court does note that under 11 U.S.C. § 507(a)(8)(A)(i) a "debt for an income tax liability that was assessed within 240 days of the bankruptcy petition is also excepted from discharge." *Id.* Redd's tax liability was assessed on September 20, 2004, less than 240 days before Redd filed his bankruptcy petition.

adequate notice to the Government of the foreclosure on the property. Thus, Mr. Powell further conceded, if the court determined that Bank of America had the authority and interest in the property to conduct the foreclosure sale, the Government's tax lien would be extinguished for failure to act in light of proper notice. Mr. Powell argued alternatively that if Bank of America did not have authority to conduct the foreclosure, the May 12, 2005, notice would not have any legal effect as to the Internal Revenue Service.

The court has determined above that Bank of America had the senior interest in the property and thus the authority to conduct the foreclosure, therefore the court determines that the liens of the United States have been extinguished pursuant to 26 U.S.C. § 7425(b).[5] Because the court made its ruling with respect to the Government's position based on the Government's admission that Bank of America had sent timely notice to the Government of the June 7, 2005, foreclosure, the court DENIES AS MOOT the Government's motion to strike and motion for extension of time to respond to Mak's motion for summary judgment [91].

---

[5]The 2008 re-recording of the tax lien has no impact on the court's rulings with respect to the Internal Revenue Service. Mr. Powell represented to the court that the Government had re-recorded the lien as protection in the event that a court would conclude that Paul Redd still had legal right to the property. Because the court concluded that Paul Redd did not have an interest in the property, the 2008 re-recording of the tax lien is of no moment.

21

## C.    Remaining Issues

The court does not find it necessary to determine at this time whether Mak or Argent (or its successors in interest) are bona fide good faith purchasers.  Because the court has determined that Bank of America still had its mortgage interest in the property when Redd purportedly conveyed the property to Stringer on March 31, 2005, Bank of America's mortgage is senior to the Stringer mortgage that Wells Fargo foreclosed on November 1, 2005, and then assigned to Argent.  Thus, those who take out of the Bank of America line have priority over those who take out of the Corey Stringer/Argent line.  Because the Redd/Stringer conveyance is junior to Bank of America's interest, the court need not consider whether the Redd/Stringer conveyance itself violated the automatic stay of the bankruptcy court.  Therefore, the court DENIES AS MOOT Mak's motion for summary judgment in favor of her quiet title claims based on the theory that Mak is an innocent and good-faith purchaser for value [89].

## III.    Conclusion

The court DENIES Argent Mortgage's motion for summary judgment [55]; GRANTS Bank of America's motion for summary judgment [75]; DENIES AS MOOT Mak's motion for summary judgment [89]; DENIES AS MOOT the Government's motion to strike and motion for extension of time to respond [91]; and DENIES Bank of America's motion to dismiss, motion to substitute party, and motion for appointment of a special master [98].

AO 72A
(Rev.8/82)

**IT IS SO ORDERED** this 15th day of September 2009.


_____/s   J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)